IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 9 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MARY OLVERA, individually and as §<br>representative of the estate of DAVID OLVERA, §<br>deceased, and next friend of JACLYN OLVERA, §<br>DEBBIE OLVERA, and IRIS OLVERA §<br>minor children, §<br>　　　　　Plaintiff, §<br>§<br>VS. §<br>§<br>§<br>JUAN JOSE TREVIÑO, PEDRO DOMINGUEZ, §<br>and JUAN MANUEL SALINAS, individually §<br>and in their official capacities as police officers, §<br>the BROWNSVILLE POLICE DEPARTMENT, §<br>and the CITY OF BROWNSVILLE, §<br>　　　　　Defendants. § | CIVIL ACTION NO. B-01-173<br><br>(JURY REQUESTED) |

---

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Defendants, Juan Jose Treviño, Pedro Dominguez and Juan Manuel Salinas, individually and in their official capacities as police officers, the Brownsville Police Department, and the City of Brownsville in the above-styled and numbered action, and file this their Motion for Summary and in support thereof would show as follows:

## I.
## SUMMARY JUDGMENT EVIDENCE

Exhibit A:　　Affidavit of Juan Manuel Salinas

Exhibit B:　　Affidavit of Juan Jose Treviño

Exhibit C:　　Affidavit of Pedro Dominguez

Exhibit D:   Affidavit of Nicolas Vito Polinar

Exhibit E:   Affidavit of Moises Guerrero

Exhibit F:   Affidavit of Jesus Cepeda

Exhibit G:   Brownsville Police Department Incident Report

## II.
## STATEMENT OF THE CASE

This is an excessive force case brought under 42 U.S.C § 1983. Plaintiff Mary Olvera, individually and as representative of the estate of David Olvera, and as next friend of Jaclyn Olvera, Debbie Olvera, and Iris Olvera have brought this action against Juan Jose Treviño, Pedro Dominguez, and Juan Manuel Salinas, individually and in their official capacities, the Brownsville Police Department and the City of Brownsville under 42 U.S.C. § 1983, alleging that Defendants Salinas, Treviño, and Dominguez used excessive force against David Olvera in violation of the Fourth and Fourteenth Amendments to the United States Constitution by firing shots into him, thereby causing his death. Plaintiffs also allege that a "policy, custom, or practice" of the City of Brownsville and Brownsville Police Department caused the injures of which they complain. Plaintiffs seek compensatory and exemplary damages.

## III.
## STATEMENT OF FACTS

On October 1, 2000, David Olvera stabbed Plaintiff Mary Olvera with a knife at her residence located at 228 Paredes Line Road (See Exs. "A," "B," "C," "E," and "F"). Brownsville Police Officers Juan Manuel Salinas, Juan Jose Treviño, and Pedro Dominguez were on patrol, and

2

responded to a call of a stabbing at this residence, (See Exs. "A," "B," and "C"). Upon arrival, the officers saw Plaintiff Mary Olvera in the front driveway holding her stomach and bleeding (See Exs. "A," "B," "C," "E," and "F"). They approached the house to look for David Olvera, the suspect. (See Exs. "A," "B," and "C"). Officer Dominguez was told by Officer Treviño to secure the backyard while he and Officer Salinas entered the residence. (See Exs. "A," "B," "C"). Officer Dominguez saw David Olvera in the backyard and yelled out to Officers Salinas and Treviño that Olvera was in the backyard. (See Exs. "A," "B," and "C").

Officers Salinas and Treviño proceeded to the backyard and saw the suspect who had a knife in his hand. (See Exs. "A," "B," and "C"). All three officers drew their weapons and repeatedly ordered David Olvera to drop the knife. (See Exs. "A," B," and "C"). David Olvera refused and began approaching the officers while swinging the knife. (See Exs. "A," B," "C," "D," and "E"). The officers moved back as David Olvera approached them. (See Exs. "A," "B," and "C"). The officers eventually backed up to a fence, but David Olvera continued to approach the officers, swinging the knife at them. (See Exs. "A," "B," and "C"). When he was within a few feet, David Olvera lunged toward the officers with the knife and all three officers discharged their weapons out of fear for their safety. (See Exs. "A," B," and "C"). Officer Salinas shot David Olvera two times, Officer Trevino shot him two times, and Officer Dominguez shot him once. (See Exs. "A," B," and "C"). David Olvera died as a result of the gunshot wounds.

## IV.
## ARGUMENTS AND AUTHORITIES

### A.    Standard for Summary Judgment.

Federal Rule of Civil Procedure 56(c) provides that a summary judgment shall be rendered if

"there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, the rule permits summary judgment even if the parties disagree as to some facts. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Summary judgment is precluded under Rule 56(c) only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. *Id.* at 248. Should it appear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the district court should grant summary judgment. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *accord Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, the defendant is entitled to summary judgment when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the plaintiff's case, and on which [the plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact). *See also Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *International Ass'n of Machinists and Aerospace Workers No. 2504 v. International Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987) ("[M]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment"); *Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . If

4

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

**B.      Plaintiffs have Failed to Properly Allege a Claim Under the Fourteenth Amendment**

Plaintiffs allege that the Defendant Police Officers deprived David Olvera of life without due process of law in violation of the Fourteenth Amendment. The Fourteenth Amendment only applies to plaintiffs alleging an officer's use of excessive force after an arrest has been completed. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). However, as in the instant case, the plaintiffs allege that the police officers used excessive force in the seizure of David Olvera before he was arrested (See Plaintiffs' Original Complaint.) The arrest was never completed as the officers were forced to shoot David Olvera before he could be taken into custody. (See Exs. "A," "B," and "C"). Accordingly, a Fourth Amendment analysis applies to this case, while the Fourteenth Amendment does not. *Graham v Conner*, 490 U.S. 386, 395 (1989). Since, Plaintiff has not established a cause of action under the Fourteenth Amendment, Defendants are entitled to summary judgment as a matter of law with respect to Plaintiffs' Fourteenth Amendment claims.

**C.      Plaintiffs' Claims Against the Brownsville Police Department Should be Dismissed**

Plaintiffs have brought suit against the Brownsville Police Department. The Brownsville Police Department is not a separate entity from the City of Brownsville, and has no capacity to sue or be sued. *See Hutchinson v Brookshire Brothers, Inc.*, 222 F.Supp 2d. 809, 825 (E.D. Tex. 2002). The Fifth Circuit has held that without a showing that Texas state law has granted a police department an independent legal existence, the police department is not a proper party to a suit. *Darby v. Pasedena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991). Since the Brownsville Police Department is nothing more than a department of the City of Brownsville with no independent

5

capacity to be sued, it is not a proper defendant. Accordingly, Defendant Brownsville Police Department is entitled to summary judgment as a matter of law.

### D. Plaintiffs Cannot Maintain a Separate Cause of Action Against the Defendant Police Officers in their Official Capacities

Plaintiffs bring their section 1983 claim against Officer Treviño, Officer Salinas, and Officer Dominguez in their official and individual capacities. A section 1983 suit against a governmental official in his or her official capacity is the equivalent of bringing suit against the governmental entity itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); see also *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Plaintiffs have brought their section 1983 claim against the City of Brownsville. Therefore, the Plaintiffs cannot recover any damages from the officers in their official capacities, since such claims were already being brought against the City of Brownsville. For these reasons Defendants Juan Jose Treviño, Pedro Dominguez and Juan Manuel Salinas, in their official capacities as police officers are entitled to summary judgment as a matter of law.

### E.    Plaintiffs cannot prove a Policy, Practice, or Custom Claim Against the City of Brownsville

The Plaintiffs have brought suit against the City of Brownsville under 42 U.S.C. § 1983. The City of Brownsville can only be held liable under § 1983 if an official policy, custom or practice caused the alleged constitutional violation. *Monell v. New York City Dep't of Social Services*, 436 U.S. 685, 690 (1978). In order to establish a policy, custom, or practice, the plaintiffs must show a "pattern of similar incidents" that is "general or widespread." *Languirand v. Hayden*, 717 F.2d 220, 227-28 (5th Cir. 1983); *cert. denied* 467 U.S. 1215, 104 S.Ct. 2656 (1984). Such a pattern is evident if there are "numerous prior incidents" showing a "systematic violation of constitutional

6

rights. *Hererra v. Valentine*, 653 F.2d 1220 (8th Cir. 1981); see also *Bennett v. City of Slidell*, 728 F.2d 762 768 (5th Cir. 1984); *cert. denied* 472 U.S. 1016, 105 S.Ct. 3476 (1985) (en banc).

Plaintiffs have no evidence of a policy, custom, or practice of the City of Brownsville that caused the alleged constitutional violation complained of.  The Plaintiffs merely make conclusory allegations in their Original Complaint, and they cannot support these conclusory allegations with competent summary judgment evidence. In order to prevail on a claim pursuant to 42 U.S.C. § 1983, plaintiffs must allege and prove specific facts, not mere conclusory allegations of such a pattern. *Elliot v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). Plaintiffs' conclusory allegations lack any evidence supporting same, and as such have insufficient to prove a "pattern of similar incidents" that is "general or wide spread."  Therefore, since Plaintiffs cannot establish that an official policy, custom or practice caused the alleged constitutional violation, Defendant City of Brownsville is entitled to summary judgment as a matter of law.

**F.    Defendant Police Officers Are Entitled to Qualified Immunity**

Police officers are entitled to qualified immunity unless their conduct violates a clearly established constitutional right.    *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The plaintiff has the burden of proof to overcome the defendant's defense of qualified immunity. *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994).  To overcome an officer's qualified immunity, a plaintiff must show the defendant violated a clearly established constitutional right through conduct that was objectively unreasonable. *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).  In the present case, the Plaintiffs cannot establish that the Defendant Police Officers' conduct was objectively unreasonable.

"The "reasonableness" inquiry in an excessive force case is an objective one: the question is

7

whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989); *Stroik v Ponseti*, 35 F3d 155, 157 (5th Cir. 1994); *See also Huong v City of Port Arthur*, 961 F.Supp. 1003, 1007 (E.D. Texas 1997). Specifically, the plaintiff must show an injury that resulted directly and only from the use of force that was clearly excessive, and the excessiveness was objectively unreasonable. *Reese v. Anderson*, 926 F.2d 494, 500 (5th Cir. 1991); *Johnson v Morel*, 876 F.2d 477, 480 (5th Cir. 1989). The "reasonableness" of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham* at 396. In determining whether the police officer acted reasonably under the totality of the circumstances, the court is required to consider the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396. Furthermore, The United States Supreme Court held that it must also be taken into consideration that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation. *Graham* at 397.

Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officers or others. *Tennessee v. Garner*, 471 U.S. 1, 105 s.Ct. 1694, 85 L.Ed.2d 1 (1985). Considering the totality of the circumstances surrounding the present case, the use of deadly force by Officers Salinas, Treviño and Dominguez was objectively reasonable, and therefore, all three defendant police officers are entitled to qualified immunity. The police officers were presented with a situation where Plaintiff Mary Olvera had told Officer Salinas

8

that she had been stabbed by David Olvera, which is a violent crime of aggravated assault or attempted murder. (See Exs. "A" and "G") and Sec. 22.02, 19.02, *Tex. Penal Code* (2002). The officers were dispatched to the Plaintiffs' residence in response to a report of a stabbing at the residence. The crime was confirmed when the officers saw Mary Olvera holding her stomach and bleeding. (See Exs. "A," "B,"and "C"). Defendants summary judgment evidence establishes that Officers Salinas, Treviño, and Dominguez observed and were confronted with a man swinging a knife at them. (See Exs. "A," "B," and "C"). The officers made reasonable attempts to diffuse the situation by repeatedly ordering David Olvera to drop the knife, but he refused. (See Exs. "A," "B," and "C"). The officers fired at David Olvera only after shouting warnings to him, after giving him a chance to surrender, and only after he lunged at the officers from close range with a knife. (See Exs. "A," "B," and "C").

The statements of the police officers are corroborated by witnesses who were present at the scene. First, Nicolas Polinar saw David Olvera in the backyard with his hands just above his waist. (Ex. "D"). He and witness Jesus Cepeda saw David Olvera continuously walk toward the officers without surrendering. (Exs. "D" and "F"). David Olvera never stopped approaching the officers until the shots were fired. (Ex. "D"). Moises Guerrero also saw David Olvera walk toward the officers. (Ex. "E"). He heard David Olvera yell at the officers and never saw David Olvera try to surrender.(Ex. "E"). He also confirms that David Olvera was close to the officers when they shot him. (Ex. "E").

Applying the "reasonableness" standard promulgated by the Supreme Court in *Graham* ,Officers Treviño, Salinas, and Dominguez's use of deadly force was clearly objectively reasonable. Each of these officers were faced with a suspect that had just committed a violent and deadly crime, and

9

who posed an immediate threat to their safety and other citizens in the community. Defendants'
summary judgment evidence conclusively establishes that David Olvera was actively resisting his
arrest by approaching the officers with a knife and failing to obey their commands. *Graham* at 396.
Accordingly, Officers Treviño, Salinas, and Dominguez are entitled to qualified immunity.

Confronted with a similar set of facts as in the present case, the Fifth Circuit recently addressed
the issue of whether a police officer was entitled to qualified immunity. In *Mace v. City of Palestine*,
2003 WL 21313717, C.A.5 (Tex.) 2003, police officers responded to a residence in reference to a
disturbance. Upon arrival, they found Jacob Vincent Revill inside the residence. *Id.* Revill was
holding an eighteen to twenty inch sword. *Id.* He was yelling, cursing, and breaking windows. *Id.*
The officers drew their weapons, and ordered Revill to drop the sword. *Id.* Revill refused. *Id.* The
officers attempted tried to calm Revill down by talking to him. *Id.* Instead, Revill continued to
brandish and make punching motions with the sword. *Id.* Revill came within eight to ten feet away
from the officers; he raised the sword toward the officers and an officer shot him. *Id.* Revill later
died at the hospital. *Id.*

The Fifth Circuit held that the police officer was entitled to qualified immunity. *Id.* The court
held that it is not objectively unreasonable for an officer confronted with that situation to believe that
there was a serious danger to himself or others. *Id.* Although still unpublished, this case serves as
persuasive authority, and provides insight as to how the Fifth Circuit would decide other cases
involving similar facts.

WHEREFORE, PREMISES CONSIDERED, Defendants, Juan Jose Treviño, Pedro Dominguez
and Juan Manuel Salinas, individually and in their official capacities as police officers, the

10

Brownsville Police Department, and the City of Brownsville, request that all of Plaintiffs' claims against them be dismissed with prejudice, that Plaintiffs take nothing by this lawsuit, that Defendants recover all costs incurred herein, and that Defendants recover such other and further relief, at law and in equity, to which they may show themselves to be justly entitled.

Singed on this 29 day of July, 2003.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: _Charles Willette_
Charles Willette, Jr.
State Bar No. 21509700
USDC Adm. No. 1937

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Defendants' Motion for Summary Judgment has on this 29 day of July, 2003, been forwarded via certified mail, return receipt requested.

**Via  CMRRR 7003 0500 0001 0981 2499**
**&  Regular Mail**
Ms. Mary Olvera
3325 Daisy Street
Brownsville, Texas 78520

Charles Willette, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARY OLVERA, individually and as | § | |
| representative of the estate of DAVID OLVERA, | § | |
| deceased, and next friend of JACLYN OLVERA, | § | |
| DEBBIE OLVERA, and IRIS OLVERA | § | |
| minor children, | § | CIVIL ACTION NO. B-01-173 |
| Plaintiff, | § | |
| | § | |
| VS. | § | (JURY REQUESTED) |
| | § | |
| JUAN JOSE TREVIÑO, PEDRO DOMINGUEZ, | § | |
| and JUAN MANUEL SALINAS, individually | § | |
| and in their official capacities as police officers, | § | |
| the BROWNSVILLE POLICE DEPARTMENT, | § | |
| and the CITY OF BROWNSVILLE, | § | |
| Defendants | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On the _____ day of_____, 2003, this cause came on to be considered the Defendants' Motion for Summary Judgment.  The Court, after reading the Defendants' Motion for Summary Judgment is of the opinion that such motion should be granted.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the Defendants' Motion for Summary Judgment be and is hereby granted and that the that PLAINTIFFS take nothing  against Defendants, Juan Jose Treviño, Pedro Dominguez and Juan Manuel Salinas, individually and in their official capacities as police officers, the Brownsville Police Department, and the City of Brownsville, and that all claims against Defendants be and are DISMISSED with prejudice.

SIGNED on this the _____ day of _____, 2003.


_____
JUDGE PRESIDING


Charles Willette, 3505 Boca Chica, suite 460, Brownsville, Texas 78521
Mary Olvera, 3325 Daisy Street, Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARY OLVERA, individually and as | § | |
| representative of the estate of DAVID OLVERA, | § | |
| deceased, and next friend of JACLYN OLVERA, | § | |
| DEBBIE OLVERA, and IRIS OLVERA | § | |
| minor children, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. B-01-173 |
| VS. | § | |
| | § | (JURY REQUESTED) |
| | § | |
| JUAN JOSE TREVIÑO, PEDRO DOMINGUEZ, | § | |
| and JUAN MANUEL SALINAS, individually | § | |
| and in their official capacities as police officers, | § | |
| the BROWNSVILLE POLICE DEPARTMENT, | § | |
| and the CITY OF BROWNSVILLE, | § | |
| Defendants. | § | |

---

**ORDER SETTING ON HEARING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

On this _____ day of _____, 2003, came on to be considered Defendants'

Motion for Summary Judgment in the above styled and numbered cause.

IT IS THEREFORE ORDERED that said Defendants' Motion for Summary Judgment be and

is hereby set for hearing on the _____ day of _____, 2003, at _____ o'clock

_____.m.

SIGNED FOR ENTRY this _____ day of _____, 2003.


_____
JUDGE PRESIDING

Charles Willette, 3505 Boca Chica, suite 460, Brownsville, Texas 78521
Mary Olvera, 3325 Daisy Street, Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARY OLVERA, individually and as §
representative of the estate of DAVID OLVERA, §
deceased, and next friend of JACLYN OLVERA, §
DEBBIE OLVERA, and IRIS OLVERA §
minor children, §
          Plaintiff, §
 §    CIVIL ACTION NO. B-01-173
VS. §
 §    (JURY REQUESTED)
 §
JUAN JOSE TREVIÑO, PEDRO DOMINGUEZ, §
and JUAN MANUEL SALINAS, individually §
and in their official capacities as police officers, §
the BROWNSVILLE POLICE DEPARTMENT, §
and the CITY OF BROWNSVILLE, §
          Defendants. §

---

## AFFIDAVIT OF JUAN MANUEL SALINAS

---

STATE OF TEXAS      §
 §
COUNTY OF CAMERON  §

COMES NOW, Juan Manuel Salinas, an individual personally known to me who duly deposed, and sworn under oath stated follows:

1.     My name is Juan Manuel Salinas. I am over 21 years of age and there are no legal impediments to my making this affidavit. I have never been convicted of a crime and I am fully competent, duly qualified and authorized to make this Affidavit, and I have personal knowledge of the matters stated herein, and they are true and correct.

3.     I am currently employed with the Brownsville Police Department as a police officer.

4.     On October 1, 2000, I was employed with the Brownsville Police Department as a police officer.

5.     At roll call on October 1, 2000, we were told to look out for a suspect named David Olvera who had threatened to kill his wife at 228 Paredes Line Road.



6.    After roll call, I went out on patrol. While on patrol, dispatch advised that a woman had been stabbed by her husband at 228 Paredes Line Road. I responded to the call and proceeded to this address which is the residence of Mary Olvera.

7.    Upon arrival at the residence, I saw Mary Olvera and a child standing in the driveway in front of the house. Mary Olvera was grabbing her stomach area, and was bleeding.

8.    I approached Mary Olvera and she told me that she had been stabbed by her husband, David Olvera. I asked her where he was, and she told me he was in the house.

9.    Officer Trevino and I entered the house located at 228 Paredes Line Road to check for the suspect, David Olvera. Officer Trevino told Officer Dominguez to check the back of the residence for David Olvera.

10.    I heard Officer Dominguez yell that the suspect was in the back of the house. Officer Trevino and I immediately proceeded to the back of the residence. At the back of the house I saw Officer Dominguez standing with his weapon drawn and pointed at David Olvera. I moved to where Officer Dominguez was.

11.    While in the back of the residence I saw David Olvera holding a knife in his right hand. He appeared upset.

12.    I drew my weapon and pointed at David Olvera while ordering him to put the knife down. Officer Trevino also drew his weapon and pointed it at David Olvera.

13.    David Olvera did not comply with my order to drop his knife, and he began walking towards me, Officer Dominguez, and Officer Trevino.

14.    I continued to order David Olvera to put the knife down, but he refused and kept approaching us yelling and swinging the knife towards us.

15.    Officers Dominguez, Trevino, and myself were eventually backed up to a fence at the back of the residence. David Olvera continuously and repeatedly refused to obey our commands to drop his knife and surrender. Instead, David Olvera continued swinging the knife at us as he approached us.

16.    David Olvera came within a few feet of me and officers Trevino and Dominguez. He then lunged towards us swinging the knife at us. At that point, I felt that my life and the lives of Officers Trevino and Dominguez were in danger. I then discharged my weapon twice at David Olvera.

17.    Officers Dominguez and Trevino shot at the same time as I did.

18.    David Olvera fell to the ground and dropped the knife. After he fell, David Olvera was still moving with the knife in his hand. I removed the knife and placed it on the ground in an area away from him.

19.    I fired my weapon at David Olvera out of fear. I believed David Olvera posed an immediate threat to the safety of myself and Officers Dominguez and Trevino.

Further affiant sayeth not.

_Juan M. Salinas_
Juan Manuel Salinas


SUBSCRIBED AND SWORN TO BEFORE ME, on the 24th day of July, 2003, to certify which witness my hand and official seal.

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS



NORMA A. MARTINEZ
MY COMMISSION EXPIRES
September 11, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARY OLVERA, individually and as §
representative of the estate of DAVID OLVERA, §
deceased, and next friend of JACLYN OLVERA, §
DEBBIE OLVERA, and IRIS OLVERA §
minor children, §
              Plaintiff, §
        §    CIVIL ACTION NO. B-01-173
VS. §
        §    (JURY REQUESTED)
        §
JUAN JOSE TREVIÑO, PEDRO DOMINGUEZ, §
and JUAN MANUEL SALINAS, individually §
and in their official capacities as police officers, §
the BROWNSVILLE POLICE DEPARTMENT, §
and the CITY OF BROWNSVILLE, §
              Defendants. §

---

## AFFIDAVIT OF JUAN JOSE TREVINO

---

STATE OF TEXAS     §
                §
COUNTY OF CAMERON §

    COMES NOW, Juan Jose Trevino, an individual personally known to me who duly deposed, and sworn under oath stated follows:

1.     My name is Juan Jose Trevino. I am over 21 years of age and there are no legal impediments to my making this affidavit. I have never been convicted of a crime and I am fully competent, duly qualified and authorized to make this Affidavit, and I have personal knowledge of the matters stated herein, and they are true and correct.

2.     I am currently employed with the Brownsville Police Department as a police officer.

3.     On October 1, 2000, I was employed with the Brownsville Police Department as a police officer.

4.     At roll call on October 1, 2000, we were told to look out for a suspect named David Olvera who had threatened to kill his wife at 228 Paredes Line Road.



EXHIBIT

B

5.  After roll call, I went out on patrol. While on patrol, dispatch advised that a woman had been stabbed by her husband at 228 Paredes Line Road. I responded to the call and proceeded to this address which is the residence of Mary Olvera.

6.  When I arrived at the residence located at 228 Paredes Line Road, I saw Mary Olvera pacing back and forth in the front driveway. She was holding her stomach area and was bleeding.

7.  I entered the residence and told two girls to exit the residence.

8.  Officer Juan Salinas and I then walked into the residence. I called out for David Olvera but there was no answer. Officer Pete Dominguez approached from behind and I told him to cover the back of the residence.

9.  Officer Dominguez proceeded to the back of the residence and yelled out that David Olvera was in the back of the residence.

10. Officer Salinas and myself immediately went to the back of the residence. Upon arrival, I saw David Olvera with a knife in his right hand. He was waiving the knife back and forth and he was visibly upset.

11. Officer Dominguez had his weapon drawn and pointed at David Olvera at the time Officer Salinas and myself arrived at the back of the residence. He was yelling at David Olvera to drop the knife but David Olvera refused to do so.

12. Officer Salinas and I were standing next to Officer Dominguez while David Olvera was swinging the knife toward us. I drew and pointed my gun at David Olvera and was continually ordering him to drop the knife he was holding and swinging.

13. David Olvera never dropped the knife he was holding and swinging. Instead, he moved forward toward us and was yelling at us while swinging the knife back and forth.

14. While we were yelling at David Olvera to drop his knife, we all took several steps back until we were back up to a fence.

15. David Olvera continued to move toward us, swinging the knife at myself and Officers Salinas and Dominguez.

16. When David Olvera was within a few feet of me and Officers Salinas and Dominguez, he lunged at us with the knife in his right hand. I felt he posed an immediate threat to the safety to me and Officers Salinas and Dominguez. I felt like my life and the lives of the other officers were in danger. I then discharged my gun twice at David Olvera. Officers Salinas and Dominguez fired shots at David Olvera at the same time. I fired my weapon out of fear for my safety and the safety of my fellow officers.

17. David Olvera fell to the ground on his back after he was shot. After he was laying on the ground, he tried to sit up and told me "Gracias, es lo que queria", which means "Thank you, that's what I wanted."

Further affiant sayeth not.



Juan Jose Treviño

SUBSCRIBED AND SWORN TO BEFORE ME, on the 24th day of _____ July _____, 2003, to certify which witness my hand and official seal.

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

NORMA A. MARTINEZ
MY COMMISSION EXPIRES
September 11, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARY OLVERA, individually and as    §
representative of the estate of DAVID OLVERA,   §
deceased, and next friend of JACLYN OLVERA,   §
DEBBIE OLVERA, and IRIS OLVERA   §
minor children,    §
             Plaintiff,    §
   §     CIVIL ACTION NO. B-01-173
VS.    §
   §     (JURY REQUESTED)
   §
JUAN JOSE TREVIÑO, PEDRO DOMINGUEZ,   §
and JUAN MANUEL SALINAS, individually   §
and in their official capacities as police officers,   §
the BROWNSVILLE POLICE DEPARTMENT,   §
and the CITY OF BROWNSVILLE,   §
          Defendants.    §

---

## AFFIDAVIT OF PEDRO DOMINGUEZ

---

STATE OF TEXAS    §
              §
COUNTY OF CAMERON   §

     COMES NOW, Pedro Dominguez, an individual personally known to me who duly deposed, and sworn under oath stated follows:

1.    My name is Pedro Dominguez. I am over 21 years of age and there are no legal impediments to my making this affidavit. I have never been convicted of a crime and I am fully competent, duly qualified and authorized to make this Affidavit, and I have personal knowledge of the matters stated herein, and they are true and correct.

2.    I am currently employed with the Brownsville Police Department as a police officer.

3.    On October 1, 2000, I was employed with the Brownsville Police Department as a police officer.

4.    At roll call on October 1, 2000, we were told to look out for a suspect named David Olvera who had threatened to kill his wife at 228 Paredes Line Road.

**EXHIBIT**

C

ALL-STATE LEGAL®

5.     After roll call, I went out on patrol. While on patrol, dispatch advised that a woman had been stabbed by her husband at 228 Paredes Line Road. I responded to the call and proceeded to this address which is the residence of Mary Olvera.

6.     When I arrived at 228 Paredes Line Road, I saw Officer John Joe Trevino and Officer Juan Salinas who were already on the scene.

7.     I remember seeing Mary Olvera in the front driveway holding her stomach area. She was bleeding and was pacing back and forth.

8.     I walked to the front entrance of the house where Officer Trevino and Officer Salinas were to speak with them. Officer Trevino told me to secure the back of the residence. I walked to the back of the residence and immediately saw David Olvera. David Olvera was holding a knife in his right hand and was swinging it back and forth in a threatening manner.

9.     I pointed my weapon at David Olvera and ordered him to drop his knife. He did not comply with my order. I yelled to Officers Trevino and Salinas that David Olvera was in the backyard.

10.     David Olvera was continuously swinging the knife from side to side, and yelling at me in an upset manner.

11.     Officers Trevino and Salinas arrived at the backyard and drew their weapons on David Olvera. All of us had our guns pointed at him, and we were repeatedly ordering him to drop the knife. David Olvera never dropped the knife.

12.     David Olvera continuously approached us swinging the knife back and forth. We moved back until the point where we were backed up to a fence.

13.     David Olvera came within a few feet of us and lunged at us with the knife in his right hand. I felt like my life and the lives of the other officers were in danger, so I discharged my weapon at David Olvera. At the time I fired my weapon, I felt and believed that David Olvera posed an immediate threat to my safety and the safety of Officers Salinas and Trevino. Officers Trevino and Salinas discharged their weapons at the same time that I did.

Further affiant sayeth not.

_____
Pedro Dominguez

SUBSCRIBED AND SWORN TO BEFORE ME, on the 2 4th day of July, 2003, to certify which witness my hand and official seal.


LUPITA G. RIVERA
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires: 01-22-2007

_____
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: PETITION OF MARY OLVERA | § | |
| Individually and as Next Friend of IRIS | § | |
| DENISE OLVERA, DEBBIE MICHELLE | § | |
| OLVERA, and JACLYN OLVERA | § | |
| MINOR CHILDREN, | § | |
| | § | CIVIL ACTION NO. B-00-172 |
| VS. | § | |
| | § | (JURY REQUESTED) |
| | § | |
| CITY OF BROWNSVILLE, BROWNSVILLE | § | |
| POLICE DEPARTMENT, CAMERON | § | |
| COUNTY SHERIFF'S DEPT., COUNTY | § | |
| OF CAMERON, PETE DOMINGUEZ, | § | |
| Indiv. and in his official capacity as Policeman, | § | |
| JUAN SALINAS, Indiv. and in his | § | |
| official capacity as Policeman, JUAN JOSE | § | |
| TREVIÑO, Indiv. and in his official capacity | § | |
| as Policeman, JOHN DOES' ONE through FOUR | § | |

---

## AFFIDAVIT

---

| | |
|---|---|
| THE STATE OF TEXAS | * |
| | * |
| COUNTY OF CAMERON | * |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Nicolas Vito Polinar who being by me duly sworn on his oath deposed and said the following:

1.    "My name is Nicolas Vito Polinar.  I am over the age of eighteen (18) years and of sound mind and suffer from no legal disabilities.  I have never been convicted of a crime and I am fully competent, duly qualified and authorized to make this Affidavit, and I have personal knowledge of the matters stated herein, and they are true and correct.  This statement is given freely and voluntarily and is in my own words.

2.    I currently reside at 106-A Simpson Street in Brownsville, Texas.  My home telephone number is (956) 504-6261.

-1-



3.   I was in my backyard on the morning of October 1, 2000. My home is across the back alley from where the shooting occurred. However, not directly behind that home. I was able to observe what occurred that morning at an angle.

4.   I observed a man without a shirt with his arms positioned just above his waist in an aggressive posture. There were policemen yelling at the man, however I could not understand what was said. I cannot say with certainty whether the man had anything in his hands.

5.   I never observed the man raise his hands as in a surrendering gesture. I instead, saw the man walking continuously toward the police officers, who never stopped approaching the officers until the shots were fired. I do not recall how many shots were fired. The man fell to the ground after the gunshots.

6.   During this event, there was noone but the man and the officers in the backyard. Several seconds passed after the shots were heard when I saw a young girl run to the backyard, calling for her father. She was not present at the time the shots were fired.

"Further Affiant sayeth not."

Nicolas Vito Polinar

SUBSCRIBED AND SWORN TO BEFORE ME by the said NICOLAS VITO POLINAR on this the __8__ day of __JANUARY__, 2001, to certify which, witness my hand and official seal.

Notary Public, State of Texas
My Commission Expires:

**CIPRIANO REYNA**
Notary Public, State of Texas
My Commission Expires 02-22-2001

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE: PETITION OF MARY OLVERA            §
Individually and as Next Friend of IRIS   §
DENISE OLVERA, DEBBIE MICHELLE            §
OLVERA, and JACLYN OLVERA                 §
MINOR CHILDREN,                           §
                                          §    CIVIL ACTION NO. B-00-172
VS.                                       §
                                          §    (JURY REQUESTED)
                                          §
CITY OF BROWNSVILLE, BROWNSVILLE          §
POLICE DEPARTMENT, CAMERON                §
COUNTY SHERIFF'S DEPT., COUNTY            §
OF CAMERON, PETE DOMINGUEZ,               §
Indiv. and in his official capacity as Policeman, §
JUAN SALINAS, Indiv. and in his           §
official capacity as Policeman, JUAN JOSE §
TREVIÑO, Indiv. and in his official capacity §
as Policeman, JOHN DOES' ONE through FOUR §

---

## AFFIDAVIT

---

THE STATE OF TEXAS        *
                          *
COUNTY OF CAMERON         *


        BEFORE ME, the undersigned Notary Public, on this day personally appeared
Moises Guerrero who being by me duly sworn on his oath deposed and said the following:


1.    "My name is Moises Guerrero. I am over the age of eighteen (18) years and of sound
      mind and suffer from no legal disabilities. I have never been convicted of a crime and I
      am fully competent, duly qualified and authorized to make this Affidavit, and I have
      personal knowledge of the matters stated herein, and they are true and correct. This
      statement is given freely and voluntarily and is in my own words.

2.    "I am an Alderman of the Iglesia Presbytariana Hispana Americana located on Paredes
      Line Road in Brownsville, Texas. I was there on October 1, 2000, at approximately 9:15

-1-



or 9:20 a.m. when Debbie Olvera, who lives at 228 Paredes Line Road, came and asked for help. I was with Jesus Cepeda, the pastor. Debbie explained that her father had stabbed her mother. I called 9-1-1 on my son's cell phone. Both the pastor and I then followed Debbie back to her house at 228 Paredes Line Road, which is just a few houses down from our church on the same side of the road.

3.     "When I got near Debbie's house, I saw that her mother was standing outside of the house next to a big sign for the hair salon that is next to their house. She was holding her stomach, which was bleeding, and looked like she was waiting for the ambulance to arrive. I stopped and stood in the front yard of the house that is to the right of Debbie's house (the address there is 216 Paredes Line Road), while the pastor went up to where the mother was standing. I was standing about 15 or 20 feet in front of the house at 216 Paredes Line Road, just a little bit to the left of the front door. I stayed here the whole time until I left.

4.     Three police officers arrived at the scene as we got there. Two went to the front door of the Olvera house, entered the house briefly, and appeared to be trying to get Debbie's two sisters, Iris and Jackie, out of the house. The third officer went to the backyard through the right side of the house. Then Debbie's two sisters came out of the house and stood by the pastor and their mother. I then heard the third officer scream something like "He's here!" or "He's here in the back yard!" From where I was standing I could partially see the police officer and another man in the back yard. The other man had no shirt on, and he kept yelling at the police officers, saying things like, "Go ahead and shoot me!", "Go ahead and shoot me."

5.     "The two officers who were in the house then came out of the front door and ran around the right side to the back of the house. They had their pistols out. They met up with the police officer in the back yard and repeatedly told Debbie's father, "Get on the ground! I could not see whether the man had a knife, but he walked towards the police officers, yelling at the police officers like he wanted to fight with them.

6.     "The police officers had their backs to me and had their pistols out. Eventually, they all stopped, elbow to elbow, at the back, righthand corner of the house. The police officers again told Debbie's father to get on the ground. It was difficult for me to see the man, because of the distance and because there were trees and fences between me and the man. Also, the police officers stood between me and the man, and two them were very big men. But I did see the man partially. I saw that he had no shirt on, that he was very agitated, yelling at the officers, and that he was getting closer to the officers. At one point, soon before he was shot, I saw his left hand. His hands were not over his head. I saw that he was not holding a knife in his left hand. It looked like he was in a fighting position, with his arm bent at his elbow, his fist clenched and slightly raised at about the level of the middle of the man's chest. It appeared to me that he was not trying to surrender or obey the officers' commands to get on the ground.

7.     At no time did I see the man's right hand or whether he was holding a knife. It simply

was not possible for me to see whether he had a knife. I did, however, hear the police officers repeatedly tell the man to get on the ground, and Debbie had told us that the man had stabbed her mother. I assumed the man had a weapon because the officers were yelling other commands at him, but I could not understand what they were.

8.    At no time did I see the man surrender to the police or raise his hands above his head. In fact, the opposite is true. The man definitely did not want to surrender but seemed to want to fight with the police. I heard two or three gunshots. I cannot say exactly how close the man was to the police officers when he was shot, but he was pretty close. All during this time, the girls and their mother were with the pastor in front of the house.

9.    "After the shots rang out, the man fell back. The police officers ran up around him, and then the girls and their mother ran down along the side of the house. One of the girls tried to get close to her father, but the police would not let her.

10.    "Attached to this affidavit are two photographs designated "Photograph No. 1" and "Photograph No. 2." I have signed the back of each photograph. I have marked with an "X" each photograph to show where I was standing at the time of the shooting."


"Further Affiant sayeth not."

MOISES GUERRERO


SUBSCRIBED AND SWORN TO BEFORE ME by the said MOISES GUERRERO on this the 30 day of November , 2000, to certify which, witness my hand and official seal.

CIPRIANO REYNA
Notary Public, State of Texas
My Commission Expires 02-28-2001

Notary Public, State of Texas
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: PETITION OF MARY OLVERA | § | |
| Individually and as Next Friend of IRIS | § | |
| DENISE OLVERA, DEBBIE MICHELLE | § | |
| OLVERA, and JACLYN OLVERA | § | |
| MINOR CHILDREN, | § | |
| | § | CIVIL ACTION NO. B-00-172 |
| VS. | § | |
| | § | (JURY REQUESTED) |
| CITY OF BROWNSVILLE, BROWNSVILLE | § | |
| POLICE DEPARTMENT, CAMERON | § | |
| COUNTY SHERIFF'S DEPT., COUNTY | § | |
| OF CAMERON, PETE DOMINGUEZ, | § | |
| Indiv. and in his official capacity as Policeman, | § | |
| JUAN SALINAS, Indiv. and in his | § | |
| official capacity as Policeman, JUAN JOSE | § | |
| TREVIÑO, Indiv. and in his official capacity | § | |
| as Policeman, JOHN DOES' ONE through FOUR | § | |

---

## DECLARACIÓN JURADA

---

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | |
| | * | |
| COUNTY OF CAMERON | * | |

ANTE MÍ, el Notario Público suscrito, en esta fecha personalmente compareció Jesús Cepeda, quien después de haberle tomado protesta, bajo juramento declaró y dijo lo siguiente:

1.      "Mi nombre es Jesús Cepeda. Soy mayor de dieciocho años de edad y en pleno uso de mis facultades mentales y sin sufrir incapacidad legal alguna. Nunca he sido acusado de un crimen y soy totalmente competente, debidamente calificado y autorizado para hacer esta Declaración y tengo conocimiento personal sobre los hechos aquí mencionados, y estos son verdaderos y correctos. Esta declaración es dada en forma libre y voluntaria.

2.      Soy pastor de la Iglesia Presbiteriana Hispana Americana ubicada en Paredes Line Road en Brownsville, Texas. Estaba ahí el 1° de octubre del 2000 aproximadamente entre 9:15 y 9:20 a.m. cuando Debbie Olvera, quien vive en el 228 Paredes Line Road, llegó, y pidió ayuda. ~~Conozco a Debbie y a su familia porque algunas veces ellos assisten a los~~ *Conozco a la señora Olvera porque algunas veces iva a los* servicios en mi iglesia. Yo estaba con Moisés Guerrero, un oficial de mi iglesia. Debbie

-1-



EXHIBIT

F

explicó que su padre había apuñalado a su madre. Moisés llamo al 911. Tanto Moisés, como yo, seguimos a Debbie de regreso de nuestra iglesia en el mismo lado del camino.

3.  "Cuando llegué a la casa de Debbie, vi a su madre parada afuera, en frente de la casa. Se estaba sosteniendo el estómago con un trapo en el lado izquierdo, y parecía que estaba esperando que llegara la ambulancia. Tres oficiales de policía llegaron al mismo tiempo que yo y el señor Guerrero. Dos de los oficiales entraron a la casa por la puerta de en frente, y el tercero se fue por la banqueta al lado derecho de la casa hacia el patio trasero. Los oficiales que entraron a la casa hicieron salir a las dos hermanas de Debbie, Iris y Jackie. Ellas se juntaron con su mama en frente de la casa.

4.  "Creo que los dos oficiales que estaban en la casa salieron por la puerta trasera al patio. Los oficiales tenían sacadas sus pistolas. Oí que los oficiales de policia le gritaban al padre de Debbie, pero no entendí lo que dijeron porque fue en inglés. Solo me acuerdo de la palabra "down!" Al oir los gritos me asomé mas hacia la izquierda. Estaba aproximadamente dos o tres pies detrás de la cerca de la casa al lado de los Olvera. No alcanse ver al padre de Debbie completamente porque uno de los oficiales me tapaba la vista. Solo alcance ver las piernas del señor. Nunca vi que el señor levantara sus manos o rendirse. No pude ver sus manos, asi que no pude ver si tenía un cuchillo, o no. Sí me acuerdo que en ningún momento se detuvo el señor. Desde el momento que yo lo vi, lo vi caminando hacia los oficiales de policía.

5.  "Entonces escuché dos disparos. En ese momento yo estaba en frente de la cerca, y me acuerdo que las tres niñas, y la mama estaban todavía en frente de su casa, pero hacia mi izquierda. No fue hasta después de los disparos que vi a Debbie correr hacia la parte trasera de la casa. Como los oficiales de policia todavia estaban tensos, yo corri para detener a Debbie. El oficial grande nos miro y nos dijo que nos retiraramos. Asi lo hicimos. Logre ver al padre de Debbie tirado sobre el suelo con los oficiales de policía rodeándolo.

6.  "A la declaración se adjunta una fotografía designada como "Fotografía No. 1" que he firmado al reverso. He señalado con una "X" el lugar donde yo estaba parado en el momento de los disparos."

"El testigo no tiene nada mas que declarar".

JESÚS CEPEDA

SUSCRITO Y JURADO ANTE MÍ por el mencionado JESÚS CEPEDA en esta día ___4___ de ___DECEMBER___ del 2000, para certificar lo cual, estampo mi firma y sello oficial.

CIPRIANO REYNA
Notary Public, State of Texas
My Commission Expires 08-08-2001

Notario Público, Estado de Texas
Mi nombramiento vence:

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE: PETITION OF MARY OLVERA            §
Individually and as Next Friend of IRIS   §
DENISE OLVERA, DEBBIE MICHELLE            §
OLVERA, and JACLYN OLVERA                 §
MINOR CHILDREN                            §
                                          §
VS.                                       §        CIVIL ACTION NO. B-00-172
                                          §
                                                   (JURY REQUESTED)

CITY OF BROWNSVILLE,                       §
BROWNSVILLE POLICE                         §
DEPARTMENT, CAMERON COUNTY                 §
SHERIFF'S DEPT., COUNTY OF                 §
CAMERON, PETE DOMÍNGUEZ, Indiv.           §
and in his official capacity as Policeman, §
JUAN SALINAS,  Indiv. and in his official §
capacity as Policeman, JUAN JOSE          §
TREVIÑO, Indiv. and in his official       §
capacity as Policeman, JOHN DOES'         §
ONE through FOUR                          §
                                          §

AFFIDAVIT

THE STATE OF TEXAS                        *

COUNTY OF CAMERON                         *

BEFORE ME, the undersigned Notary Public, on this day personally appeared
Jesus Cepeda who being y me duly sworn on his oath deposed and said the following:

1.    "My name is Jesus Cepeda.  I am over the age of eighteen (18) years of age and
      of sound mind and suffer from no legal disabilities. I have never been convicted
      of a crime and I am fully competent, duly qualified and authorized to make this
      Affidavit, and I have personal knowledge of the matters stated herein, and they
      are true and correct. This statement is given freely and voluntarily and is in my
      own words."

2.    "I am the pastor  for the Iglesia Presbiteriana Hispana America located on
      Paredes Line Road in Brownsville, Texas.  I was there on October 1, 2000, at



approximately between 9:15 and 9:20 a.m. when Debbie Olvera, who lives at 228 Paredes Line Road, came and asked for help. I know Mrs. Olvera because she sometimes attended services at my church. I was with Moises Guerrero, an officer at my church. Debbie explained that her father had stabbed her mother. Moises called 911. Both Moises and I followed Debbie back home from our church on the same side of the road."

3. "When I got to Debbie's house, I saw that her mother was standing outside, in the front of the house.  She was holding a her stomach with a rag on her left hand side, and looked like she was waiting for the ambulance to arrive.  Three police officers arrived at the same time that I and Mr. Guerrero did.  Two of the officers entered the house through the front door and the third one walked on the sidewalk to the right side of the house, towards the back patio. The officers who entered the house made Debbie's two sisters, Iris and Jackie, get out. They gathered their mom in the front of the house."

4. "I think that the two officers that were in the house came out through the back door to the patio.  The officers had their guns drawn.  I heard the officers yell at Debbie's father, but I didn't understand what they said because it was in English. I only remember the word "down!" When I heard the yelling I looked more towards the left.  I was approximately two or three feet behind the fence of the house next to the Olvera's.  I was not able to see Debbie's father completely because one of the officers was blocking my view.  I was only able to see the man's legs. I never saw the man put up his hands or surrender.  I could not see his hands, so I could not see if he had a knife or not. I do remember that the man did not stop at any time. From the moment I saw him, I saw him walking towards the police officer."

5. "Then I heard two gunshots. I was in front of the fence, and I remember the three girls and the mother were still in front of their house, but towards my left. It wasn't until after the gunshots that I saw Debbie run towards the back of the house. Since the police officers were still tense, I ran to stop Debbie. The big officer saw us and told us to stay away.  So we did. I was able to see Debbie's father laying on the ground with the police officers around him."

6. "Attached to this affidavit there is a photograph labeled "Photograph No. 1"  with my signature on the back.  I have mark with an "X" the spot where I was standing at the time of the gunshots."

"Further Affiant sayeth not."

_____
JESUS CEPEDA

      SUBSCRIBED AND SWORN TO BEFORE ME by the said JESUS CEPEDA on this the _____4_____ day of _____December___, 2000, to certify which, witness my hand and official seal.

<br>

<br>

                                    _____

                                    Notary Public, State of Texas
                                    My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARY OLVERA, individually and as | § | |
| representative of the estate of DAVID OLVERA, | § | |
| deceased, and next friend of JACLYN OLVERA, | § | |
| DEBBIE OLVERA, and IRIS OLVERA | § | |
| minor children, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. B-01-173 |
| VS. | § | |
| | § | (JURY REQUESTED) |
| | § | |
| JUAN JOSE TREVIÑO, PEDRO DOMINGUEZ, | § | |
| and JUAN MANUEL SALINAS, individually | § | |
| and in their official capacities as police officers, | § | |
| the BROWNSVILLE POLICE DEPARTMENT, | § | |
| and the CITY OF BROWNSVILLE, | § | |
| Defendants. | § | |

---

## AFFIDAVIT OF DAVID D. INFANTE

---

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

COMES NOW, **David D. Infante**, an individual personally known to me who duly deposed, and sworn under oath stated follows:

My name is **David D. Infante**, I am of sound mind, capable of made this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records at Brownsville Police Department. Attached hereto is one (1) page from Brownsville Police Department records. This one (1) page record is kept by Brownsville Police Department in the regular course of business, and it was the regular course of business of the Brownsville Police Department for an employee or representative of Brownsville Police Department, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of reasonable soon thereafter. The records attached hereto are the original or exact duplicated of the original.

EXHIBIT

G

Further affiant sayeth not.



**David D. Infante**

SUBSCRIBED AND SWORN TO BEFORE ME, on the 24 day of July, 2003, to certify which witness my hand and official seal.

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

AIDE G. CERVANTES
MY COMMISSION EXPIRES
April 1, 2006

**BROWNSVILLE POLICE DEPARTMENT**
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000 - 911 Emergency

☐ **OFFENSE** Report   Call Number: 200030352858   Date: 10-01-00
☐ **INCIDENT** Report   Disposition: Active
**CHARGE(S):**   Attempted Murder

## OFFENSE / INCIDENT

Family Violence? ☑ Yes ☐ No

| Earliest Date Occurred: 10-01-00 | Time: 9:17 am/pm | Latest Date Occurred: 10-01-00 | Time. 9:22 am/pm | Time Dispatched 9:17 am/pm |
|---|---|---|---|---|

**Location of Occurrence** (Specific location type—Jewelry Store, Apartment, Public Street, etc.)

| Address Number | N S E W | Street Name | St/Av/Rd | Apt/Ste | City | County | State | Zip Code |
|---|---|---|---|---|---|---|---|---|
| 228 | | Paredes Line | Rd | | Brownsville | Cameron | Tx | 78521 |

| Investigating Officer (PRINT) | Employee No | CID Assigned | Employee No | Date Assigned |
|---|---|---|---|---|
| Rudy Garcia | 3512 | | | |

| ☑ Victim ☐ Complainant ☐ Witness | Last Name or Name of Business | First Name | Middle Name | Jr/Sr/Etc |
|---|---|---|---|---|
| | Olvera | Mary | | |

| Address Number | N S E W | Street Name | St/Av/Rd | Apt/Ste | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| 228 | | Paredes Line | Rd | | Brownsville | Tx | 78521 |

| Race | Male/Female | Date of Birth | Age | Married/Single/Divorced/Widowed | Relationship to Suspect | Injured? | Describe injury and weapon used |
|---|---|---|---|---|---|---|---|
| W/H | ☑ Female | 05-17-62 | 38 | ☑ Married | Spouse | ☑ Yes ☐ No | See Narrative |

| Home Telephone | Business Telephone | Place of Employment | Occupation |
|---|---|---|---|
| | | | |

| ☐ Victim ☐ Complainant ☐ Witness | Last Name or Name of Business | First Name | Middle Name | Jr/Sr/Etc |
|---|---|---|---|---|
| | | | | |

| Address Number | N S E W | Street Name | St/Av/Rd | Apt/Ste | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Race | Male/Female | Date of Birth | Age | Married/Single/Divorced/Widowed | Relationship to Suspect | Injured? | Describe injury and weapon used |
|---|---|---|---|---|---|---|---|
| | ☐ Male ☐ Female | | | | | ☐ Yes ☐ No | |

| Home Telephone | Business Telephone | Place of Employment | Occupation |
|---|---|---|---|
| | | | |

| ☐ Victim ☐ Complainant ☐ Witness | Last Name or Name of Business | First Name | Middle Name | Jr/Sr/Etc |
|---|---|---|---|---|
| | | | | |

| Address Number | N S E W | Street Name | St/Av/Rd | Apt/Ste | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Race | Male/Female | Date of Birth | Age | Married/Single/Divorced/Widowed | Relationship to Suspect | Injured? | Describe injury and weapon used |
|---|---|---|---|---|---|---|---|
| | ☐ Male ☐ Female | | | | | ☐ Yes ☐ No | |

| Home Telephone | Business Telephone | Place of Employment | Occupation |
|---|---|---|---|
| | | | |

| ☑ Suspect ☐ Missing ☐ Runaway | Last Name or Name of Business | First Name | Middle Name | Jr/Sr/Etc |
|---|---|---|---|---|
| | Olvera | David | | |

| Address Number | N S E W | Street Name | St/Av/Rd | Apt/Ste | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| 228 | | Paredes Line | Rd | | Brownsville | Tx | 78521 |

| Home Telephone | ☐ DL ☐ ID | State | Number | Married/Single/Divorced/Widowed | Place of Birth | Aliases |
|---|---|---|---|---|---|---|
| | | | | ☑ Married | | |

| Race | Male/Female | Date of Birth | Age | Height | Weight | Hair | Eyes | Complexion | Language | Describe any injuries |
|---|---|---|---|---|---|---|---|---|---|---|
| W/H | ☑ Male ☐ Female | 3-13-63 | 37 | | | | | | ☐ English Only ☐ Spanish Only ☐ Bilingual | |

| Clothing Description | Scars, Marks, Tattoos Etc |
|---|---|
| | |

| ☐ Suspect ☐ Missing ☐ Runaway | Last Name or Name of Business | First Name | Middle Name | Jr/Sr/Etc |
|---|---|---|---|---|
| | | | | |

| Address Number | N S E W | Street Name | St/Av/Rd | Apt/Ste | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Home Telephone | ☐ DL ☐ ID | State | Number | Married/Single/Divorced/Widowed | Place of Birth | Aliases |
|---|---|---|---|---|---|---|
| | | | | | | |

| | Male/Female | Date of Birth | Age | Height | Weight | Hair | Eyes | Complexion | Language | Describe any injuries |
|---|---|---|---|---|---|---|---|---|---|---|
| | ☐ Male ☐ Female | | | | | | | | ☐ English Only ☐ Spanish Only ☐ Bilingual | |

| Clothing Description | Scars, Marks, Tattoos Etc |
|---|---|
| | |

FOR MORE THAN TWO SUSPECTS, ATTACH ADDITIONAL OFFENSE REPORT(S)

Continued on other side>>>

Rev. 10/95